# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SARA ROSENBERG, et al.,** : | |
| **Plaintiffs,** : | |
| : | **CIVIL ACTION** |
| **v.** : | |
| : | **NO. 14-5608** |
| **DVI RECEIVABLES, XIV, LLC, et al.,** : | |
| **Defendants.** : | |

## MEMORANDUM OPINION

**RUFE, J.**                                                                                    **June 4, 2015**

Plaintiffs (collectively "Rosenberg affiliates") allege that Defendants (collectively "U.S. Bank affiliates") engaged in tortious interference by filing involuntary bankruptcy petitions in bad faith against Maury Rosenberg and his businesses, National Medical Imaging, LLC ("NMI") and National Medical Imaging Holding Company, LLC ("NMI Holding"). Presently before the Court is the motion of U.S. Bank affiliates to dismiss the Complaint.

## I.       FACTUAL AND PROCEDURAL HISTORY

Plaintiffs' tortious interference claim is closely related to more than a decade of litigation between Maury Rosenberg, NMI, and NMI Holding and U.S. Bank and its affiliates. The history of this litigation has been described in exhaustive detail in two prior opinions by this Court and will only be repeated here to the extent necessary to provide context for this opinion.[1]

The Rosenberg affiliates allege that they suffered monetary losses as a result of the filing of the involuntary bankruptcy petitions against Maury Rosenberg and NMI. When the involuntary bankruptcy petitions were filed on November 7, 2008, the Rosenberg affiliates had

---

[1] The Court incorporates by reference Section I of its memorandum opinion and order dated March 24, 2015, *see DVI Receivables XIV, LLC, et al.  v. National Medical Imaging, LLC, et al.*, 14-CV-3787, 2015 WL 1344754 (E.D. Pa. Mar. 24, 2015), and Section I of its memorandum opinion and order dated March 30, 2015, *see National Medical Imaging, LLC, et al. v. U.S. Bank, N.A., et al.*, 14-CV-2974, 2015 WL 1455987 (E.D. Pa. Mar. 30, 2015).

close business and personal relationships with Rosenberg and NMI. Plaintiffs 209 Chestnut St. Associates, LP, 1501 Edgemont Associates, LP, 1538 DeKalb Associates, LP, 1561 Medical Drive Associates, LP, Imaging Properties of Illinois, LP, Imaging Properties of Philadelphia, LP, Imaging Properties of Roxborough, LP, Lane Limited Partnership IV, LP, and 1561 Medical Drive Associates, LP owned real property subject to mortgages guaranteed by Maury Rosenberg and leased that property to NMI. Sara Rosenberg was the majority owner of 209 Chestnut St. Associates, as well as the Trustee of Plaintiff Douglas Rosenberg 2004 Trust, which is a Rosenberg family trust. Sara Rosenberg is also married to Maury Rosenberg.

The Rosenberg affiliates allege that the U.S. Bank affiliates filed the involuntary bankruptcy petitions "with the intent of improperly trying to force Maury Rosenberg and NMI into a settlement [of the U.S. Bank affiliates' claims pursuant to a guaranty agreement] by destabilizing NMI, thus impairing its ability to repay the intra-family loans from the Plaintiff Trust, and triggering defaults on the Plaintiff Rosenberg Real Estate Partnerships' mortgages with their lenders."[2] According to the Complaint, this remarkably complex scheme was successful and caused substantial injury to each Rosenberg affiliate. Specifically, the filing of the involuntary bankruptcy petitions allegedly caused the real estate partnerships to default on their mortgages and lose their property, Sara Rosenberg to lose her entire interest in 209 Chestnut St Associates, and the Douglas Rosenberg 2004 Trust to suffer $5,000,000 in losses on its investments in the real estate partnerships.

On August 20, 2013, the Rosenberg affiliates filed this action in the United States District Court for the Southern District of Florida.[3] Upon motion by the U.S. Bank affiliates, the

---

[2] Compl. at ¶ 2.

[3] Although the filing of this case in Florida raises a choice of law question, the Court determines that it is not necessary to determine whether Florida or Pennsylvania law governs the tortious interference claim at this time.

Southern District of Florida determined that the proper venue for this case was the Eastern District of Pennsylvania because the principal conduct giving rise to the litigation and the primary injuries that allegedly resulted occurred in the Eastern District.[4]

## II.    STANDARD OF REVIEW

In order to survive a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[5] Additionally, it "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[6] A plaintiff who survives a motion to dismiss for failure to state a claim on which relief may be granted states facts sufficient to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"[7]

## III.    DISCUSSION

Defendants contend that Plaintiffs have failed to state a claim on several grounds, including that Plaintiffs' state-law tortious interference claim is preempted by 11 U.S.C. § 303(i). Section 303(i) provides the following statutory remedy for the bad faith filing of an involuntary bankruptcy petition:

> If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment …
> > (2) against any petitioner that filed the petition in bad faith, for—
> > > (A) any damages proximately caused by such filing; or
> > > (B) punitive damages.

---

[4] The Complaint properly alleges that the Rosenberg affiliates are citizens of Florida and Pennsylvania, whereas the U.S. Bank affiliates are citizens of Delaware and Minnesota, and therefore this Court exercises diversity jurisdiction pursuant to 28 U.S.C. § 1332.

[5] Fed. R. Civ. P. 8(a)(2).

[6] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

[7] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Section 303(i), however, only permits recovery by the debtor and the Rosenberg affiliates are not debtors, but rather third parties affiliated with the debtor.[8] The Rosenberg affiliates contend that § 303(i) does not preempt state-law claims by third parties because such an interpretation of § 303(i) would leave third parties without a remedy for the bad faith filing of an involuntary bankruptcy petition.

The Third Circuit apparently has not addressed this issue. Although the Third Circuit held in *Paradise Hotel Corp. v. Bank of Nova Scotia* that a state-law claim brought by the debtor was not preempted by § 303(i), the facts of *Paradise Hotel Corp.* are so different from those at issue in this case as to render *Paradise Hotel Corp.* inapposite.[9] In *Paradise Hotel Corp.*, a creditor filed an involuntary Chapter 7 (liquidation) bankruptcy petition against the debtor.[10] Although the Bankruptcy Code entitles the debtor to convert a Chapter 7 petition to a Chapter 11 (reorganization) petition,[11] the debtor filed a separate Chapter 11 petition and obtained a stay of the involuntary Chapter 7 petition.[12] The parties then litigated the Chapter 11 petition and the involuntary Chapter 7 petition remained stayed.[13] The debtor therefore could not file a § 303(i) claim without litigating the involuntary Chapter 7 petition to dismissal.

Although the debtor had been able to re-organize through a separate Chapter 11 petition, the *Paradise Hotel Corp.* court reasoned that holding that § 303(i) preempted state-law claims by the debtor prior to dismissal of an involuntary Chapter 7 petition,

---

[8] *See In re VII Holdings Co.*, 362 B.R. 663, 668 (Bankr. D. Del. 2007) (citing *In re Miles*, 430 F.3d 1080, 1093-94 (9th Cir. 2005)).

[9] 842 F.2d 47, 52.

[10] *Id.* at 48.

[11] 11 U.S.C. § 706.

[12] *Paradise Hotel Corp.*, 842 F.2d at 48.

[13] *Id.* at 49.

would place the debtor in this situation on the horns of a dilemma by requiring it to choose between two unattractive alternatives. One alternative would be to pay the price of indefinitely postponing the conversion [to Chapter 11 bankruptcy] in order to litigate the legal sufficiency of the petition, the bad faith of the petition, and the amount of damages in the Chapter 7 case. The other alternative would be to convert immediately in order to secure the Chapter 11 advantages the debtor was intended to have but thereby release its claims against the petitioner who allegedly petitioned in bad faith. We think that Congress did not intend that a debtor should have to pay this kind of penalty for exercising its statutory right to convert promptly.[14]

The *Paradise Hotel Corp.*'s concern for the debtor's ability to convert a Chapter 7 bankruptcy to a Chapter 11 bankruptcy limits the scope of its holding in the next sentence of the opinion: "Accordingly, we decline to hold that § 303(i)(2) is an exclusive remedy in *a situation of this kind*."[15] Thus, *Paradise Hotel Corp.* stands for the proposition that § 303(i) does not preempt state-law claims by a Chapter 7 debtor brought prior to dismissal of the involuntary bankruptcy petition.

This case falls outside the scope of the holding in *Paradise Hotel Corp.* and the reasoning of *Paradise Hotel Corp.* does not support extending its holding to encompass this case. Plaintiffs in this case are third parties and the involuntary bankruptcy petitions have already been dismissed, which means that the debtor's ability to convert the bankruptcy to Chapter 11 is not implicated. Although there might appear to be a tension between allowing any state-law claims by the debtor, who has an express right of action under § 303(i), and finding that claims by third parties are preempted, allowing Chapter 7 debtors to bring state-law claims serves Congress' manifest intent in enacting § 303(i) because it is clear from the plain language of § 303(i) that

---

[14] *Id.* at 52.

[15] *Id.* at 52 (emphasis added). Although the *Paradise Hotel Corp.* court used broader language earlier in the opinion when it stated that it found the argument that "the remedy provided by § 303(i)(2) of the Code against petitioners who have filed in bad faith is an exclusive one" to be "unpersuasive," *id.* at 51, this language is merely an introduction to the court's analysis. The issue of whether § 303(i) precluded state-law claims by third parties was not before the *Paradise Hotel Corp.* court and the court's holding was limited to the situation before it as described above.

Congress intended debtors to be able to recover for the bad faith filing of an involuntary bankruptcy petition. The Third Circuit has interpreted *Paradise Hotel Corp.* to rest upon "a gap in the text the [Bankruptcy] Code" which meant that the Code "failed to provide a remedy against a creditor that had improperly filed an involuntary petition for bankruptcy against a debtor."[16] Filling in this gap by allowing state-law claims by Chapter 7 debtors was therefore consistent with Congress' intent that the debtor be able to recover.

With regard to state-law claims by third parties, however, the Ninth Circuit's decision in *In re Miles* persuasively reasons that § 303(i)'s failure to provide a remedy for third parties is not another gap to be filled in by allowance of state-law claims, but rather a deliberate omission. The facts of *In re Miles* are strikingly similar to this case: family members of several debtors alleged that they suffered losses as a result of the filing of involuntary bankruptcy petitions against the debtor and sought to bring state law claims against the petitioners.[17] The *In re Miles* court held that the family members' claims were preempted by § 303(i) because,

> The 'highly complex' nature of the Bankruptcy Code … and 'the unique, historical, and even constitutional need for uniformity in the administration of bankruptcy laws,' ... undermine the argument that we can infer from Congress's failure to create a federal remedy for third parties that it intended to allow such parties to pursue state court litigation as a form of collateral attack on involuntary bankruptcy proceedings. When Congress enacted the comprehensive Bankruptcy Reform Act of 1978 after a decade-long debate, it could not have gone unrecognized that debtors' immediate family members might also suffer the same types of harm or emotional distress as their family members who are subject to involuntary bankruptcy proceedings. Yet Congress determined that bankruptcy courts could award damages predicated on the bad faith filing of involuntary petitions only to the debtors themselves-those participants in involuntary bankruptcy proceedings who suffer most directly the harm from frivolous or spiteful filings. The relevant Senate and House Reports state:
>> [I]f a petitioning creditor filed the petition in bad faith, the court may award *the debtor* any damages proximately caused by the filing of the petition. These damages may include such items as

---

[16] *See U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 393 (3d Cir. 2002).

[17] *In re Miles*, 430 F.3d at 1086.

> loss of business during and after the pendency of the case, and so on …
>
> Because Congress intended the Bankruptcy Code to create a whole scheme under federal control that would adjust *all* of the rights and duties of creditors and debtors alike … we can infer from Congress's clear intent to provide damage awards only to the debtor in federal proceedings predicated upon the bad faith filing of an involuntary petition that Congress did not intend third parties to be able to circumvent this rule by pursuing those very claims in state court.[18]

This reasoning applies with equal force to claims by businesses affiliated with the debtor in order to recover losses that the businesses allegedly sustained as a result of the filing of the involuntary bankruptcy petition against the debtor.[19] Although Plaintiffs contend that *In re Miles* is distinguishable because the tortious interference claim does not rest exclusively upon the filing of the involuntary bankruptcy petitions, Plaintiffs do not explain this contention and do not allege any other basis for the claim.

Plaintiffs further contend that the Seventh Circuit's decision in *In re Repository Technologies* constitutes contrary authority, but the state-law claims at issue in that case arose from the bad faith filing of a *voluntary* bankruptcy petition.[20] Because the Bankruptcy Code does not contain a statutory mechanism akin to § 303(i) to recover for the bad faith filing of a voluntary bankruptcy petition, *In re Repository Technologies* is not relevant to this case.[21]

## IV.     CONCLUSION

For these reasons, the Court will adopt the reasoning of *In re Miles* and dismiss Plaintiffs' tortious interference claim as preempted by 11 U.S.C. § 303(i).

---

[18] *Id.* at 1091 (internal citations omitted) (emphasis original).

[19] Although the Third Circuit has noted that *Paradise Hotel Corp.* is in tension with the Ninth Circuit's holding in *Gonzales v. Parks*, 830 F.2d 1033 (9th Cir. 1987), that claims arising from the filing of a bankruptcy petition are a matter of exclusive federal jurisdiction, state-law claims brought by third parties were not at issue in *Gonzales*. *See Higgins*, 281 F.3d at 393 n. 5 (noting the tension).

[20] 601 F.3d 710, 724 (7th Cir. 2010).

[21] *See id.* at 724 (distinguishing *In re Miles*).

An appropriate order follows.