IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SARA ROSENBERG,** *et al.*, <br> **Plaintiffs,** <br><br> v. <br><br> **DVI RECEIVABLES, XIV, LLC,** *et al.*, <br> **Defendants.** | : <br> : <br> : **CIVIL ACTION** <br> : <br> : **NO. 14-5608** <br> : <br> : <br> : |

**MEMORANDUM**

**Rufe, J.**                                                                                                                                   **August 28, 2019**

      This is the latest chapter in a long-running litigation saga, and the Court writes primarily for the parties, who are well aware of the background. Plaintiffs (collectively "Rosenberg affiliates") allege that Defendants (collectively "U.S. Bank affiliates") engaged in tortious interference by filing involuntary bankruptcy petitions in bad faith against Maury Rosenberg and his businesses, National Medical Imaging, LLC ("NMI") and National Medical Imaging Holding Company, LLC ("NMI Holding"). Defendant U.S. Bank has filed a counterclaim against Plaintiff Douglas Rosenberg 2004 Trust (the "Trust") for alter ego liability, seeking to hold the Trust liable for outstanding judgments that U.S. Bank holds against Maury Rosenberg. Before the Court are the U.S. Bank affiliates' motion for summary judgment on the Rosenberg affiliates' claim for tortious interference, and the Trust's motion for summary judgment on U.S. Bank's counterclaim. For the following reasons, both motions will be granted.

**I.     BACKGROUND**

      The history of this litigation has been described in exhaustive detail in two prior opinions by this Court,[1] and will only be repeated here to the extent necessary to provide context for this

---

[1] The Court incorporates by reference Section I of its memorandum opinion and order dated March 24, 2015, *see DVI Receivables XIV, LLC, et al. v. National Medical Imaging, LLC, et al.*, 14-CV-3787, 2015 WL 1344754 (E.D.

opinion. Plaintiffs in the present action include Sara Rosenberg, the Trust, and various limited partnerships that served as landlords to NMI (collectively, "Rosenberg Real Estate Partnerships"). Sara Rosenberg is trustee of the Trust and owns the majority interest in one of the Rosenberg Real Estate Partnerships (209 Chestnut St. Associates, L.P.). The Trust is the General and Limited Partner of the Rosenberg Real Estate Partnerships.

Plaintiffs allege that the U.S. Bank affiliates "were involved in the commencement and prosecution"[2] of involuntary petitions filed in bad faith on November 7, 2008, against Maury Rosenberg, NMI, and NMI Holding, with whom the Rosenberg affiliates had close business and personal relationships. The Rosenberg affiliates allege that these involuntary bankruptcy petitions were filed with the intent of destabilizing NMI, the Trust, and the Real Estate Partnerships, in order to force Maury Rosenberg and NMI into a settlement of the U.S. Bank affiliates' claims relating to a disputed debt.[3] The bad faith petitions allegedly caused economic ruin to Maury Rosenberg, and consequently to his affiliates.[4] For example, the petitions allegedly triggered defaults on Rosenberg Real Estate Partnerships' mortgages,[5] and Plaintiffs Sara Rosenberg and the Trust allege that they "sustained millions of dollars in damages in the form of loss of property, loan receivables impairment, damages to credit, and lost benefit of life insurance."[6]

---

Pa. Mar. 24, 2015), and Section I of its memorandum opinion and order dated March 30, 2015, *see National Medical Imaging, LLC, et al. v. U.S. Bank, N.A., et al.*, 14-CV-2974, 2015 WL 1455987 (E.D. Pa. Mar. 30, 2015).

[2] Compl. ¶ 101.

[3] *Id.* ¶ 2.

[4] *Id.* at 4.

[5] *Id.* ¶ 2.

[6] *Id.* ¶ 93.

The involuntary bankruptcy petitions were ultimately dismissed.[7] The U.S. Bank affiliates appealed the dismissal of the Florida petition against Maury Rosenberg, which was affirmed by the Eleventh Circuit on July 6, 2012.[8] On December 27, 2010, while the appeal was pending, Maury Rosenberg filed an action against the U.S. Bank affiliates in the Southern District of Florida to recover damages under 11 U.S.C. § 303(i) for the bad faith filing of the involuntary bankruptcy petition against him.[9] In that case, Maury Rosenberg attempted to recover damages on behalf of himself and his affiliates by arguing that he had standing to recover damages for losses "he *himself* suffered, albeit indirectly through the loss in value of his own closely held and/or alter ego entities."[10]

The court precluded Maury Rosenberg from recovering damages on behalf of the affiliates, determining that he lacked standing to recover for the injuries incurred by third parties, and that he could only recover for his own injuries.[11] As to the Trust in particular, the court found that Maury Rosenberg offered no evidence that the Trust was his alter ego; rather, the Trust "was created to protect [his] assets" and Maury Rosenberg "cannot now, for his convenience, eviscerate its separate legal existence."[12] The Rosenberg affiliates then filed the present action on August 20, 2013, asserting a claim of tortious interference.[13]

---

[7] The petition against Maury Rosenberg was dismissed on August 21, 2009, in the Bankruptcy Court for the Southern District of Florida. *In re Rosenberg*, 414 B.R. 826 (Bankr. S.D. Fla. 2009). The petition against NMI was dismissed on December 28, 2009, in the Bankruptcy Court for the Eastern District of Pennsylvania. *In re National Medical Imaging, LLC*, 439 B.R. 837 (Bankr. E.D. Pa. 2009).

[8] *In re Rosenberg*, 472 F. App'x 890 (11th Cir. 2012).

[9] *See* Order from U.S. District Court Southern District of Florida [Doc. No. 1-19] at 4.

[10] Pls.' Mem. of Law in Supp. of Family Enterprise Damages, Ex. A [Doc. No. 70-1] at 2–3.

[11] *Rosenberg v. DVI Receivables, IV, LLC*, 12-cv-22275, 2012 WL 5198341, at *2 (S.D. Fla. Oct. 19, 2012).

[12] *Rosenberg v. DVI Receivables, XIV, LLC*, 12-cv-22275, 2012 WL 5198341, at *3 (S.D. Fla. Oct. 19, 2012).

[13] The Rosenberg affiliates originally filed this action in the Southern District of Florida, and upon motion by the U.S. Bank affiliates, the case was transferred to this Court. [Doc. No. 1-1].

U.S. Bank has filed a counterclaim against the Trust, seeking to impose alter ego liability against it so as to hold it liable for approximately $6 million in unsatisfied judgments against Maury Rosenberg that were previously entered by this Court.[14] According to U.S. Bank, it has not been able to collect these judgments from Maury Rosenberg because he purports to hold no assets in his name. Instead, Maury Rosenberg allegedly maintains his assets, including judgments obtained against U.S. Bank,[15] in the Trust, which he uses to pay his "personal expenses, personal loans and family expenses … whenever Rosenberg chose to pay such expenses and in Rosenberg's sole discretion."[16] U.S. Bank also contends that Maury Rosenberg used his control of both NMI and the Trust to his advantage by borrowing hundreds of thousands of dollars from NMI for personal expenses in loans that were "really a form of undeclared income,"[17] and then erasing this debt by having the Trust reduce phantom debt NMI purportedly owed to the Trust.[18] As a result, according to U.S. Bank, Maury Rosenberg has ignored the separate existence of the Trust as a legal entity, using it instead as a means to defraud creditors[19] and causing the Trust to "engage in improper insider transactions, preferential transactions and fraudulent transactions, all for his sole benefit."[20]

---

[14] U.S. Bank's Countercl. [Doc. No. 29] at 24–25.

[15] *Id.* at 19–20, 23–24. In particular, Maury Rosenberg allegedly decides what assets to place in the Trust, what expenses it would pay, what obligations it would incur, and what loans it would make, and he makes these decisions in his sole discretion without direction from the Trustees or the sole Beneficiary to the trust, Douglas Rosenberg. *Id.* at 20.

[16] *Id.* at 21.

[17] *Id.* at 23.

[18] According to U.S. Bank, this debt to the Trust was based on loans that "did not exhibit any of the usual incidents of bona fide loans," and which were either capital contribution made to the Rosenberg Trust or phantom loans, designed to conceal the diversion of hundreds of thousands of dollars from NMI to the prejudice of NMI's creditors. *Id.* at 21–22.

[19] *Id.* at 24.

[20] *Id.*

## II. LEGAL STANDARD

A court will award summary judgment on a claim or part of a claim where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[21] A fact is "material" if resolving the dispute over the fact "might affect the outcome of the suit under the governing [substantive] law."[22] A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[23]

In evaluating a summary judgment motion, a court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor.[24] Further, a court may not weigh the evidence or make credibility determinations.[25] Nevertheless, the party opposing summary judgment must support each essential element of the opposition with concrete evidence in the record.[26] "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[27] This requirement upholds the "underlying purpose of summary judgment [which] is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense."[28] Therefore, if, after making all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine dispute as to any material fact, summary judgment is appropriate.[29]

---

[21] Fed. R. Civ. P. 56(a).

[22] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[23] *Id.*

[24] *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

[25] *Boyle v. Cty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998).

[26] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

[27] *Anderson*, 477 U.S. at 249–50 (internal citations omitted).

[28] *Walden v. Saint Gobain Corp.*, 323 F. Supp. 2d 637, 641 (E.D. Pa. 2004) (citing *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976)).

[29] *Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 83 (3d Cir. 1987).

## III. DISCUSSION

### A. Defendants' Motion for Summary Judgment on Plaintiffs' Claim for Tortious Interference with Contractual or Business Relationships

Defendants argue that Plaintiffs' sole claim against them—that U.S. Bank affiliates tortiously interfered with Rosenberg affiliates' loans and business relationships—is time-barred. The parties agree that Pennsylvania's two-year statute of limitations for tortious interference actions governs.[30] For a claim of tortious interference, the limitations period begins to run when "a plaintiff can assert and maintain an action," which, for a claim of tortious interference, occurs when the plaintiff suffers injury as a result of the defendant's conduct.[31] According to Defendants, Plaintiffs knew of the allegedly interfering events and their injuries "substantially more than two years before" they filed suit on August 20, 2013.[32]

There can be no denying that Plaintiffs were aware of the Defendants' allegedly tortious conduct and resulting injuries more than two years before they filed the present suit.[33] The involuntary bankruptcy petitions that allegedly caused the injury were filed nearly five years earlier, on November 7, 2008, and were dismissed in 2009.[34] In her deposition, Plaintiff Sara Rosenberg admitted that she recognized "right away" that the involuntary bankruptcy case would

---

[30] 42 Pa. Cons. Stat. § 5524(3). Importantly, all of the real estate at issue and the alleged business relationships were located in Pennsylvania, and the Florida district court determined that the tortious interference claim arose in Pennsylvania when it transferred the case to this Court for lack of venue. *See* Order from U.S. District Court Southern District of Florida [Doc. No. 1-19] at 12-13.

[31] *CGB Occupational Therapy, Inc. v. RHA Health Services Inc.*, 357 F.3d 375, 384 (3d Cir. 2004).

[32] Defs.' Mem. in Supp. Mot. Summ. J. [Doc. No. 67-1] at 6. "In Pennsylvania, a cause of action accrues when the plaintiff could have first maintained the action to a successful conclusion." *Fine v. Checcio*, 870 A.2d 850, 857 (Pa. 2005).

[33] On appeal of this Court's decision on U.S. Bank affiliates' motion to dismiss, the Third Circuit declined to rule on their argument that the claim was time-barred, determining that it was "unclear from the record when the Rosenberg Affiliates were injured and when their tortious interference claim accrued." *Rosenberg v. DVI Receivables XVII, LC*, 835 F.3d 414, 422 n.6 (3d Cir. 2016).

[34] The petition in Florida was dismissed on August 21, 2009, and the petition in Pennsylvania was dismissed on December 28, 2009.

cause problems, including liquidity issues, to the Trust,[35] and in January of 2010, the Trust lost its loan receivables due from NMI when NMI was forced to surrender its accounts receivables to Sterling National Bank.[36] The petitions also allegedly forced NMI to close its imaging businesses between 2008 and 2009,[37] thus harming the Rosenberg Real Estate Partnership, which owned many of the buildings in which the imaging centers were housed.[38]

Plaintiffs do not dispute that they knew of the allegedly tortious conduct and resulting injuries more than two years before they filed the present suit in August of 2013. In fact, Plaintiffs appear to concede that they knew of the injuries at least by December 27, 2010, when Maury Rosenberg filed the action in which he attempted to recover for Plaintiffs' injuries in the Southern District of Florida.[39] Although the suit "turned out to be [in] the wrong forum," Plaintiffs contend that they are entitled to equitable tolling in this action because they timely attempted to pursue their claims in Florida.[40] In the alternative, they argue that the statute of limitations was tolled until either October 10, 2011, when U.S. Bank affiliates appealed the affirmance of the dismissal of the involuntary bankruptcy petition to the Eleventh Circuit, or July

---

[35] Sara Rosenberg Tr., Ex. 3 [Doc. No. 68-3] at 111, 116-17.

[36] *See* App. to Defs.' Mot. Summ. J., Ex. 9 [Doc. No. 67-2].

[37] App. to Defs.' Mot. Summ. J., Ex. 1 [Doc. No. 67-2].

[38] Pls.' Mem. in Opp'n Mot. Summ. J. [Doc. No. 69] at 9; App. to Defs.' Mot. Summ. J., Ex. 1 [Doc. No. 67-2] at 4. Without NMI's business, several of the properties owned by Plaintiffs went into mortgage default in 2010, *See* App. to Defs.' Mot. Summ. J., Ex. 4 [Doc. No. 67-2], and all but one of the properties housing imaging centers were sold or transferred between 2009 and 2010. *See* App. to Defs.' Mot. Summ. J., Ex. 3 [Doc. No. 67-2]. Two of the Real Estate Partnerships that owned properties which were not used as imaging centers, but which were allegedly harmed by NMI's ruin, were also sold "unwillingly (when the market was at its lowest just following the mortgage crisis)" in 2009 and 2010. Pls.' Mem. in Opp'n Mot. Summ. J. [Doc. No. 69] at 10. Pls.' Opp'n Mot. Summ. J., Ex. 21, 22 [Doc. Nos. 69-4, 69-5].

[39] Pls.' Mem. in Opp'n Mot. Summ. J. [Doc. No. 69] at 12. Plaintiffs assert that this December 2010 date was "within two years from when Plaintiffs suffered their injuries." *Id.* Plaintiffs also assert that Maury Rosenberg "diligently sought to recover" those damages "not just to Rosenberg and NMI, but to other entities related to him, such as the Trust, the Real Estate Partnerships, and his wife Sara," in that action in the Southern District of Florida and that it "was only when the Florida District Court held that the damages sought here could not be recovered in that action that Plaintiffs could have realized the need to file the present action." *Id.* at 13.

[40] *Id.* at 12.

7

6, 2012, when the Eleventh Circuit affirmed the district court's determination that the petition was properly dismissed.[41]

  1. **Equitable Tolling**

Plaintiffs contend that Maury Rosenberg "diligently sought to recover [] damages on behalf of [Rosenberg affiliates] in his § 303(i) Action" in Florida on a timely basis, and only when the Florida court precluded him from doing so did the Rosenberg affiliates realize they needed to file the present action.[42] Plaintiffs argue that they are therefore entitled to equitable tolling, because they timely pursued their claims "in what, by no fault of Plaintiffs, turned out to be the wrong forum."[43]

Plaintiffs' argument in support of equitable tolling relies on the federal standard for tolling, which is "more lenient" than that of Pennsylvania state law,[44] and which allows for tolling "where the plaintiff asserts her claims in a timely manner but has done so in the wrong forum."[45] But "a federal court must apply the substantive laws of its forum state in diversity actions, and these include state statutes of limitations"[46] and tolling principles.[47] Although federal courts turn to the federal tolling doctrine in "limited circumstances" where state tolling rules contradict federal law or policy, such a conflict is generally limited to the context of suits

---

[41] *Id.* at 13.

[42] *Id.*

[43] *Id.* at 12.

[44] *Poole v. Marks*, 441 F. App'x 854, 857 (3d Cir. 2011) (citing the "more lenient federal standard" for tolling the limitations period).

[45] *Lake v. Arnold*, 232 F.3d 360, 370 n.9 (3d Cir. 2000). The parties seem to agree that Pennsylvania, not Florida, law applies.

[46] *Lafferty v. St. Riel*, 495 F.3d 72, 76 (3d Cir. 2007).

[47] *Vernau v. Vic's Market, Inc.*, 896 F.2d 43, 45 (3d Cir. 1990) ("state tolling principles are generally to be used by a federal court when it is applying a state limitations period") (citing *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 463–64 (1975)).

brought under federal law.[48] As this case is brought exclusively under state law, Pennsylvania's tolling principles will be applied to this action.

"Pennsylvania favors strict application of the statutes of limitation,"[49] under which "[m]ere mistake or misunderstanding is insufficient" for tolling.[50] In Pennsylvania, equitable tolling is only recognized where either (1) the discovery rule applies, whereby the plaintiff is reasonably unaware that his or her injury has been caused by another party's conduct, or (2) the defendant is estopped from relying on the limitations period because the defendant's fraud or concealment caused the untimely filing.[51] Neither exception is applicable to this case, where Plaintiffs assert that they timely filed an action for their alleged injuries in the wrong forum, and the statute of limitations will thus not be tolled.

It should be noted that on rare occasions, the Pennsylvania's Commonwealth Court and the Third Circuit have used federal tolling principles when analyzing equitable tolling under Pennsylvania law.[52] In these cases, however, the courts did not discuss Pennsylvania's stricter tolling principles under § 5504.[53] Regardless, even if federal principles applied, Plaintiffs have

---

[48] *See Johnson*, 421 U.S. at 465 ("considerations of state law may be displaced where their application would be inconsistent with the federal policy *underlying the cause of action under consideration*.") (emphasis added); *Lake*, 232 F.3d at 370 (holding that the Pennsylvania statute of limitations was at odds with the objectives that § 1983 and § 1985(3) foster by barring a member of a protected class from the ability to bring a claim and seeking compensation).

[49] *Wachovia Bank, N.A. v. Ferretti*, 935 A.2d 565, 572 (Pa. Super. Ct. 2007) (citation omitted).

[50] *Deek Investment, L.P. v. Murray*, 157 A.3d 491, 497 (Pa. Super. Ct. 2017) (citing *McClean v. Djerassi*, 84 A.3d 1067, 1070 (Pa. Super. Ct. 2013)).

[51] *Young v. Local 1201, Firemen & Oilers Union*, No. 07-3576, 2009 WL 3152119, at *8 (E.D. Pa. Sept. 25, 2009), *aff'd*, 419 F. App'x 235 (3d Cir. 2011).

[52] *See McPherson v. United States*, 392 F. App'x 938, 944 (3d Cir. 2010) (analyzing Pennsylvania tolling principles by way of citing to a Pennsylvania case that applied federal tolling principles); *Uber v. Slippery Rock Univ. of Pa.*, 887 A.2d 362, 366 (Pa. Commw. Ct. 2005) (analyzing federal tolling principles for Pennsylvania Human Relations Act claims).

[53] *Aivazoglou v. Drever Furnaces*, 613 A.2d 595, 598 (Pa. Super. Ct. 1992) ("[A]bsent fraud or its equivalent, judicial extensions of time are expressly prohibited by Section 5504 of the Judicial Code.").

not shown that they would be entitled to equitable tolling based on Maury Rosenberg's timely filed § 303(i) action in Florida. The two cases lack the same plaintiffs; Maury Rosenberg, who is not a plaintiff in this action, was the sole plaintiff in that Florida case. Additionally, these two cases lack the same claims; the Florida action was filed pursuant to 11 U.S.C. § 303(i)(2), whereas Plaintiffs in the present case assert a state-law claim of tortious interference.[54] Furthermore, Plaintiffs waited ten months after the Florida court denied Maury Rosenberg's ability to obtain relief for their damages before filing this suit, and were thus not reasonably diligent.[55]

### 2. Whether the Claim Did Not Accrue Until October 10, 2011, or July 6, 2012

In the alternative, Plaintiffs contend that the statute of limitations accrued, not when the involuntary bankruptcy petitions were filed and injured Plaintiffs, but after Defendants challenged the dismissal of the petition in federal court in Florida. First, Plaintiffs argue that, under a continuing violations theory, the statute of limitations did not begin to run until October 10, 2011, when Defendants appealed the Florida district court's decision to affirm the bankruptcy court.[56] According to Plaintiffs, Defendants' appeals constituted a continuous practice of pursuing their bad faith involuntary bankruptcy petitions, and therefore their tortious interference claim did not accrue until Defendants filed notice of their final appeal.[57] Plaintiffs also offer July 6, 2012, as an alternative date of accrual, which is when the Eleventh Circuit

---

[54] *See School Dist. of City of Allentown v. Marshall*, 657 F.2d 16, 19-20 (3d Cir. 1981) ("tolling may be appropriate … when … *the plaintiff* has raised the *precise statutory claim* in issue but has mistakenly done so in the wrong forum.") (emphasis added).

[55] *See Pace v. DiGuglielmo*, 544 U.S. 408, 418–19 (2005) (stating unexplained delay of five months precludes equitable tolling); *Merritt v. Blaine*, 326 F.3d 157, 168 (3d Cir. 2003) (petitioner must show that he or she exercised "reasonable diligence" in order to benefit from equitable tolling).

[56] Pls.' Mem. in Opp'n Mot. Summ. J. [Doc. No. 69] at 17.

[57] *Id.*

affirmed the district court's determination that the involuntary bankruptcy petition was properly dismissed.[58] They argue that, under Pennsylvania law, the statute of limitations begins to run only "when all elements of the claim have been met,"[59] and thus Defendants did not lack "a privilege or justification," one of the essential elements for a tortious interference claim,[60] until the dismissal of the petition was final.

Neither of these arguments has merit, as Plaintiffs' tortious interference claim accrued prior to the appeals following the bankruptcy court's decision. A claim accrues when the allegedly interfering act is discovered, and in their Complaint, Plaintiffs allege that their injuries were caused by the filing of the involuntary bankruptcy petitions themselves, not the appeal of the bankruptcy court's decision.[61] Indeed, the alleged injuries, described above, occurred even before the October 10, 2011, appeal date.

Moreover, the Eleventh Circuit's judgment was not a prerequisite for Plaintiffs' tortious interference claim. Unlike abuse of process claims, to which Plaintiffs analogize the present case, tortious interference claims do not have as a prerequisite the termination of the underlying proceedings in favor of the person against whom they are brought,[62] and Plaintiffs cite to no

---

[58] *Id.* at 19.

[59] *Hyldahl v. Denlinger*, 661 F. App'x 167, 170 (3d Cir. 2016).

[60] The elements of a claim for tortious interference are "(1) the existence of a contractual relationship between the complainant and a third party; (2) an intent on the part of the defendant to harm the plaintiff by interfering with that contractual relationship; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual damage as a result of defendant's conduct." *Walnut Street Associates, Inc. v. Brokerage Concepts, Inc.*, 982 A.2d 94, 98 (Pa. Super. Ct. 2009).

[61] "As a result of the involuntary petitions, the Rosenberg Real Estate Partnerships were declared in default of the loans … and the Trust could not afford the term premium or the conversion premium on a life insurance policy it held insuring the life of Maury Rosenberg." Compl. ¶¶ 95, 96

[62] 42 Pa. C.S.A. § 8351(a)(2).

authority to suggest that a lack of privilege or justification must be judicially determined before an action for tortious interference may be maintained.[63]

Plaintiffs' claim based on the injuries alleged in this action was certainly ripe well before the Eleventh Circuit issued its decision.[64] In fact, Plaintiffs contend that they did attempt to recover for their injuries in the Southern District of Florida, where Maury Rosenberg, by Plaintiffs' own admission, "sought to obtain relief *from all damages* that resulted from the involuntary bankruptcy filings when he timely filed a lawsuit … in 2010."[65] That case was filed on December 27, 2010, about 10 months before the Defendants appealed the bankruptcy court's decision in Florida, and about 18 months before the Eleventh Circuit issued its decision. Plaintiffs' tortious interference claim will therefore be dismissed as time-barred.[66]

## B. The Trust's Motion for Summary Judgment on U.S. Bank's Counterclaim

### 1. Judicial Estoppel

The Trust argues that U.S. Bank's counterclaim, by which U.S. Bank seeks to impose alter ego liability on the Trust, is barred by judicial estoppel because in the Southern District of

---

[63] *See Hyldahl*, 661 F. App'x at 170–71 (holding that, where defendants were alleged to have caused plaintiff to lose employment by filing arbitration proceedings against plaintiff in bad faith, the plaintiff's tortious interference claim accrued on the date the plaintiff's employment was terminated, even though his Dragonetti claim did not accrue until the arbitration proceedings were withdrawn).

[64] *See Ross v. Johns-Manville Corp.*, 766 F.2d 823, 826 (3d Cir. 1985) ("A claim arising under Pennsylvania law accrues at the occurrence of the final significant event necessary to make the claim suable.") (internal quotations and citation omitted); *Danysh v. Eli Lilly and Co.*, No. 1-10-CV-02116, 2011 WL 4344601 (M.D. Pa. July 13, 2011) (finding that the rule that a cause of action accrues when a plaintiff could have first maintained the action to a successful conclusion means "not that a plaintiff must be able to prevail on the merits, but that an injury has occurred, a right of recovery has arisen, and thus the injured party can survive a motion to dismiss for failure to state a claim"); *Fine v. Checcio*, 870 A.2d 850, 857 (Pa. 2005) ("[T]he statute of limitations begins to run as soon as the right to institute and maintain a suit arises.").

[65] Pls.' Mem. in Opp'n Mot. Summ. J. [Doc. No. 69] at 14.

[66] Defendants also argue in their motion that the undisputed facts establish that they did not intentionally interfere with business relationships, that Sara Rosenberg lacks standing to sue individually, that prior findings and Plaintiffs' own allegations establish that DVI Funding and DVI XVII were not involved, and that U.S. Bank cannot be sued other than as successor to Lyon. As the tortious interference claim is time-barred, the Court need not address these additional arguments.

12

Florida, U.S. Bank successfully argued that Maury Rosenberg could not use alter ego liability to recover damages suffered by the Trust. The Trust argues that U.S. Bank is now impermissibly seeking to take the "exact opposite position in this Court simply because U.S. Bank believes that is favorable to it now."[67]

Judicial estoppel may be used by federal courts to sanction malfeasance by barring a litigant from "asserting a position that is inconsistent with one he or she previously took before a court or agency."[68] A district court may apply judicial estoppel when the party to be estopped has taken "irreconcilably inconsistent" positions, the party changes his or her position in bad faith, and where estoppel is "tailored to address the harm identified and no lesser sanction would adequately remedy the damage done by the litigant's misconduct."[69] "The basic principle" of judicial estoppel is that "absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory."[70] However, it is "not intended to eliminate all inconsistencies no matter how slight or inadvertent they may be" and should only be used when the inconsistent positions are "tantamount to a knowing misrepresentation to or even fraud on the court."[71] It is a "fact-specific, equitable doctrine, applied at the courts' discretion,"[72] and should only be applied to avoid a miscarriage of justice.[73]

---

[67] Pls.' Mem. in Supp. Mot. Summ. J. on Countercl. [ Doc. No. 66-1] at 10.

[68] *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 779 (3d Cir. 2001).

[69] *Id.* 779–80 (internal quotations and citations omitted).

[70] *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 358 (3d Cir. 1996) (quoting 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4477 (1981), at 782).

[71] *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 319, 324 (3d Cir. 2003).

[72] *In re Kane*, 628 F.3d 631, 638 (3d Cir. 2010).

[73] *Krystal Cadillac*, 337 F.3d at 319–20.

Although U.S. Bank previously opposed using the alter ego theory to pierce the veil of the very Trust it now seeks to obtain judgments from, the context in which it argued these positions are only superficially similar and are not "irreconcilably inconsistent."

In Florida, Maury Rosenberg sought to increase the scope of his recoverable damages by attempting "to recover damages suffered by him personally, as well as by his family of companies, which, in substance, rather than form, [he] controls," including the Trust.[74] In opposition, U.S. Bank asserted that Maury Rosenberg "lack[ed] standing to sue to enforce any claim the Trust may have," and that Maury Rosenberg could not pierce a veil that he created himself for his own benefit.[75] U.S. Bank did not assert that Maury Rosenberg could never be considered the alter ego of the Trust, but that he "has not offered a shred of evidence that he is the alter ego of the Trust," other than his "self-serving statements."[76]

Further, rather than focusing on whether Maury Rosenberg was in fact the Trust's alter ego, U.S. Bank's opposition was largely driven by its characterization of Maury Rosenberg's damages claim as "offensive"; namely, Maury Rosenberg was attempting to obtain "the best of both worlds: limited liability for debts incurred in the corporate name, and direct compensation for its losses."[77] U.S. Bank argued that Maury Rosenberg should not be permitted to claim that the Trust was his alter ego, while the Trust's tax returns simultaneously represented the Trust as "a separate and valid entity."[78] According to U.S. Bank, Maury Rosenberg's position was problematic, as "[c]ourts have been stalwart in refusing to allow individuals to cast off the

---

[74] Pls.' Mem. of Law in Supp. of Family Enterprise Damages, Ex. A [Doc. No. 70-1] at 2.

[75] Defs.' Mem. on Loss Allegedly Sustained by Douglas Rosenberg 2004 Trust, Ex. B [Doc. No. 70-2] at 3.

[76] *Id.* at 4.

[77] *Id.*

[78] *Id.*

corporate form as a means of recovering the damages that were sustained by a corporation or other entity"; rather, the alter ego theory is "typically used by the IRS or other creditors to reach trust assets."[79] Additionally, U.S. Bank explicitly left open the possibility that the representations as to the Trust's separate existence were fraudulent, asserting that "[i]f Rosenberg is now asserting that the Trust was a mere fiction, it is time to contact the IRS and the U.S. Attorney, not to award Rosenberg more damages."[80]

U.S. Bank's pleading in Florida thus appears to have contemplated its present position: that a creditor should be permitted to reach into the Trust, the separate existence of which Maury Rosenberg disregarded in order to conceal his assets from creditors. This does not contradict its prior position that Maury Rosenberg cannot reap the benefits of alter ego liability, while simultaneously representing that the Trust is entirely separate and valid. Indeed, the doctrine of veil-piercing is driven by principles of equity,[81] and courts have been cautious to allow individuals to pierce a corporate veil that they themselves created in order to enrich themselves.[82] Therefore, in light of the fact-specific nature of the doctrine of judicial estoppel, U.S. Bank's position in this case is not irreconcilably inconsistent with its position in Florida, and the Court will not dismiss the counterclaim on grounds of judicial estoppel.

---

[79] *Id.*

[80] *Id.*

[81] "This legal fiction that a corporation is a legal entity separate and distinct from its shareholders was designed to serve convenience and justice, and will be disregarded whenever justice or public policy demand…" *Ashley v. Ashley*, 482 Pa. 228, 237 (Pa. 1978) (citations omitted).

[82] *See, e.g., In re Kaplan*, 143 F.3d 807, 812 (3d Cir. 1998) ("since Kaplan chose to structure his business in the corporate form and received the benefits of that form by avoiding liability for MKI's debts, the derivative injury rule prevents him from piercing the corporate veil in reverse in order to recover individually for MKI's losses."); *Kagan v. Edison Bros. Stores, Inc.*, 907 F.2d 690, 693 (7th Cir. 1990) (holding that the plaintiffs could not "seek the best of both worlds: limited liability for debts incurred in the corporate name, and direct compensation for its losses. That cushy position is not one the law affords. Investors who created the corporate form cannot rend the veil they wove").

**2. Timeliness**

Piercing the corporate veil is not a cause of action unto itself; rather it is an equitable doctrine used to remove the protection of the corporate form in cases where justice so requires.[83] The proper statute of limitations to apply to a piercing the corporate veil claim depends, then, on the claims underlying the veil-piercing action.[84]

The Trust asserts that the claim underlying the alter ego counterclaim is Maury Rosenberg's breach of the 2005 Rosenberg Guaranty (the basis of the judgments U.S. Bank holds against Maury Rosenberg) in 2008. According to the Trust, the counterclaim is thus subject to Pennsylvania's four-year statute of limitations for breach of contract, and as the alleged breach occurred in 2008, this action, brought in 2014, is untimely. In response, U.S. Bank asserts that the cause of action underlying U.S. Bank's veil-piercing claim is not breach of contract, but the enforcement of an unsatisfied judgment against Maury Rosenberg, and that the counterclaim is thus subject to a four-year statute of limitations running from the date of the judgment.[85] According to U.S. Bank, the judgments were entered on September 3, 2015 and May 4, 2016,[86] and the counterclaim filed on October 28, 2016, is thus timely under the statute of limitations for an action for the enforcement of both judgments.

The decision in *Madonna v. Francisco*[87] is instructive. In that case, an individual sought to collect an outstanding judgment against a non-party corporate entity from that entity's owner

---

[83] *Fletcher–Harlee Corp. v. Szymanski,* 936 A.2d 87, 96 (Pa. Super. Ct. 2007) ("Piercing the corporate veil is a means of assessing liability for the acts of a corporation against an equity holder in the corporation.").

[84] *Madonna v. Francisco*, Civil Action No. 13-807, 2014 WL 981568, at *3 (E.D. Pa. Mar. 13, 2014).

[85] 42 Pa. C.S.A. § 5525(a)(5). U.S. Bank asserts that its Counterclaim may be subject to an even longer, twenty-year statute applicable to enforce a judgment against the original debtor, 42 Pa. C.S.A. § 5529(a). As the claim is timely under the four-year statute of limitations for actions on a judgment applies, the Court need not address this argument.

[86] Case No. 12-cv-723-CMR [Doc. No. 211, 218].

[87] *Madonna*, 2014 WL 981568, at *3–4.

and alleged alter ego. The court noted that, while no Pennsylvania cases have determined which statute of limitations to use in a veil-piercing claim to enforce a judgment—"the statute of limitations for the original cause of action against the corporation or the statute of limitations for enforcement of a judgment—courts in other jurisdictions addressing this very issue treat the claim underlying the veil-piercing theory as one to enforce a judgment and, accordingly, apply the statute of limitations for enforcement actions."[88] Thus, the court in *Madonna* applied the four-year statute of limitations for "action[s] upon a judgment or decree of any court of the United States or of any state," which accrue when the judgment was entered.[89] The Court finds this case persuasive, and as the underlying breach of contract is essentially immaterial to U.S. Bank's present efforts to enforce a judgment, its counterclaim is not barred by the statute of limitations attached to breach of contract claims.[90]

### 3. Whether Pennsylvania Law Permits Piercing the Veil of a Trust

The question of whether the theory of veil-piercing applies to trusts is a matter of state law, and Pennsylvania courts have not resolved this issue. The Trust argues that it is unlikely that Pennsylvania would allow for an extension of the doctrine of veil-piercing in a case such as this,

---

[88] *Id.* at *4.

[89] Plaintiff argues that the circumstances here are different from *Madonna*, because that case was "brought against both the entity against whom the judgment was held, as well as the alleged alter ego, and thus were clearly claims to enforce a judgment." Pls.' Reply in Supp. Mot. Summ. J. [Doc. No. 71] at 9. Plaintiff is incorrect, as the judgment at issue in that case was against a non-party corporation. *Madonna, 2014 WL 981568,* at *1 ("Plaintiff Christopher Madonna, unable to collect on a default judgment obtained in state court against non-party Kinesis, now seeks to collect on that judgment from Kinesis's alter ego, Defendant Gregory Francisco, and Kinesis's successor, Defendant AvanuOne LLC."). Regardless, in this case, although the judgment is held against Maury Rosenberg, U.S. Bank is clearly trying to enforce the judgment against his alleged alter ego: the Trust.

[90] *See also Susquehanna Trust and Inv. Co. v. Ansar Grp., Inc.*, No. 3442 EDA 2012, 2013 WL 11250980, at *6 (Pa. Super. Ct. Nov. 19, 2013) (holding that where plaintiff sought to collect a judgment from a third party on a theory of reverse veil piercing, the underlying cause of action was for enforcement of an unsatisfied judgment).

17

"involving an irrevocable trust which was succeeded by a prior trust established for estate planning purposes," and in which Maury Rosenberg lacks formal ownership interest.[91]

As U.S. Bank correctly contends, Pennsylvania courts have generally relied on notions of equity when disregarding the corporate form, setting aside the "legal fiction" of a separate entity whenever "justice or public policy demand."[92] In fact, "there appears to be no clear test or well settled rule in Pennsylvania … as to exactly when the corporate veil can be pierced and when it may not be pierced"; instead courts look to the totality of the circumstances.[93] Public policy is certainly implicated in this case where Maury Rosenberg used his complete control over the Trust for purportedly improper purposes.[94]

However, despite these equitable considerations, Pennsylvania also "carries a strong presumption against piercing the corporate veil,"[95] and thus without clear precedent, the Court will not extend the boundaries of veil-piercing to allow U.S. Bank to impose alter ego liability on an irrevocable trust for the debts of an individual without any formal ownership interest in the trust. Pennsylvania courts have been hesitant to extend the concept of veil piercing, and have strictly employed it as a means for holding those with ownership interest in a corporation liable.[96] For example, in *Robinson*, the Superior Court of Pennsylvania reversed a trial court's

---

[91] Pls.' Mem. in Supp. Mot. Summ. J. on Countercl. [ Doc. No. 66-1] at 17.

[92] *Ashley v. Ashley*, 482 Pa. 228, 237. (Pa. 1978)

[93] *Good v. Holstein*, 787 A.2d 426, 430 (Pa. Super. Ct. 2001); *Plastipak Packaging, Inc. v. DePasquale*, 75 F. App'x 86, 88 (3d Cir. 2003) ("Under Pennsylvania law, courts apply a totality of the circumstances test when determining whether to pierce the corporate veil and impose alter ego liability.").

[94] According to U.S. Bank, Sara Rosenberg serves as the sole trustee of the Trust "in name only," Douglas Rosenberg, the sole Beneficiary, "played no role in the decisions, investments and business activities of the Rosenberg Trust," and Maury Rosenberg has "always exerted absolute dominion and control over the Rosenberg Trust." U.S. Bank's Countercl. [Doc. No. 29] at 19–20.

[95] *Mark Hershey Farms, Inc. v. Robinson*, 171 A.3d 810, 816 (Pa. Super. Ct. 2017) (citing *Fletcher-Harlee Corp. v. Szymanski*, 936 A.2d 87, 95 (Pa. Super. Ct. 2007)).

[96] *Newcrete Prods. v. City of Wilkes-Barre*, 37 A.3d 7, 14 (Pa. Commw. Ct. 2012) (holding that piercing the corporate veil was inapplicable where, "[r]egardless of how controlling City may have been in its cooperative relationship with Authority, City does not have an ownership interest in Authority that can be reached by piercing

decision to extend the concept of veil piercing to hold the beneficiary of an estate liable for debts of the estate, noting that "[s]uch a broad rule would be contrary to the limited nature of th[e] narrow exception to the strong presumption against piercing the corporate veil."[97] In that case, the trial court employed veil piercing to rectify an "unjust situation," after determining that although the beneficiary "never actually came into a position of direct ownership … he was capable of holding an equitable interest in the corporation and [] he did hold an indirect interest in the corporation by virtue of his status as the sole beneficiary of Lonnie's Estate."[98] Moreover, it found that he had engaged in "utterly irresponsible actions," and he conveyed a "desire to shield himself from liability while he incurred additional substantial debt in the name of the corporation[...] in total disregard of the rights of creditors."[99] Although the Superior Court noted that there was "ample support" in the record for these findings, it found that the lower court "erred as a matter of law in piercing the corporate veil to assess personal liability on [the beneficiary] who was not a shareholder of [the corporation], but merely a beneficiary of the estate…"[100]

Here, Maury Rosenberg is not the settlor/grantor or beneficiary of the Trust, nor does he have a formal ownership interest in the Trust. Therefore, despite the evidence of his improper use of the Trust, the Court will not extend the concept of veil piercing to these circumstances, and this counterclaim will be dismissed.[101]

---

the corporate veil."); *Robinson*, 171 A.3d at 816 ("when it is appropriate to pierce the corporate veil, it is the shareholder, and not some other entity, who is held liable.").

[97] *Robinson*, 171 A.3d at 816.

[98] *Id.*

[99] *Id.* at 817.

[100] *Id.*

[101] Although U.S. Bank correctly asserts that veil piercing is employed to "prevent fraud, illegality, or injustice," it does not provide any Pennsylvania case law applying this theory to an irrevocable trust,[101] and the cases it cites in support of its position are not persuasive on this point. For example, in *In re Moshannon Valley Citizens, Inc.*, a

IV.     CONCLUSION

For the reasons stated above, the Court will grant the Trust's motion for summary judgment on U.S. Bank's counterclaim, and the counterclaim will be dismissed. The Court will also grant Defendants' motion for summary judgment on Plaintiffs' claim for tortious interference, which will be dismissed as time-barred. As there are no remaining claims or counterclaims, the case will be dismissed. An appropriate order follows.

---

federal bankruptcy court determined that an alter ego claim against a trust was not a core claim, and did not address whether this was a viable cause of action under Pennsylvania law. Bankruptcy No. 1:06–bk–00095, 2009 WL 522906, at *4 (Bankr. M.D. Pa. Feb. 25, 2009). Additionally, in *In re Richards*, a federal bankruptcy court, applying federal law, found that the IRS could pierce the veil or a delinquent taxpayer's alter ego trust, based on the "underlying theme … that if the taxpayers treated and viewed the subject property as their own, it will be construed as belonging to them for federal tax purposes." No. 97–14798, 1998 WL 205915, at *12 (Bankr. E.D. Pa. Apr. 3, 1998). Using veil piercing for tax collection purposes involves different considerations than those in the present circumstances.